```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X
TOKYO ELECTRON ARIZONA, INC.,

                Plaintiff,                    MEMORANDUM AND ORDER
                                                 01-CV-3245(DRH)
        -against-

DISCREET INDUSTRIES CORPORATION,
OVADIA MERON, et. al.,

                Defendants.
-------------------------------X
A P P E A R A N C E S:

For Plaintiff:
    Framer, Lawrence & Haag, L.L.P.
    745 Fifth Avenue, Tenth Floor
    New York, NY 10151
       By:  Edgar H. Haug, Esq.
            Kevin Murphy, Esq.
            James K. Stronski, Esq.

For Defendants:
    Carrella, Byrne, Bain, Gilfillan, Cecchi,
    Stewart & Olstein, P.C.
    6 Becker Farm Road
    Roseland, NJ 07068-1739
       By:  Dennis F. Gleason, Esq.
            A. Richard Ross, Esq.

HURLEY, District Judge
```

Discreet Industries Corporation ("Discreet") and Ovadia Meron ("Meron") (collectively "defendants") seek an order, presumably pursuant to Fed. R. of Civ. P. 50(b), to set aside the jury's verdict on Tokyo Electron Arizona's conversion and tortious interference with contract claims on the basis that both claims, as a matter of law, are time-barred. See Defs.' Supplemental Mem. Supp. at 2.

As explained infra, defendants' motion is denied.

INTRODUCTION

On April 1, 2004 a jury returned a verdict in favor of Tokyo Electron Arizona, LLC, ("TAZ" or "plaintiff") against defendants on five of plaintiff's six causes of action and also assessed punitive damages against defendants. A number of post-verdict motions by defendants followed. Those motions were all resolved by a series of decisions issued in November 2004, with two exceptions: (1) plaintiff's application for attorney's fees, and (2) defendants' affirmative defense that two of the causes of action, to wit, those for conversion and tortious interference, were time-barred under the applicable statute of limitations. Plaintiff's application for attorney's fees is the subject of a separate decision to be issued shortly.

The purpose of the present decision is to readdress, and this time, to resolve defendants' statute of limitations defenses. To place the discussion in context, reference to my earlier decision on the same subject, entitled "Re Statute of Limitations Defenses" dated November 16, 2004, is necessary. In that earlier decision, the following conclusions were reached: (1) Arizona's, not New York's statute of limitations, applies to both the conversion and tortious interference claims, and (2) that defendants' cryptic, conclusory assertion that the claims were time-barred — absent, inter alia, specific references to the

-2-

twenty-five hundred plus page transcript and/or the thousands of pages of exhibits — was insufficient to permit the Court to evaluate the proffered affirmative defenses on the merits; for that reason, defendants' post-verdict statute of limitations motion was denied, but without prejudice. By "Supplemental Memorandum" dated December 8, 2004, defendants renewed their claim that the trial evidence establishes that both the conversion and tortious interference causes of action are time-barred.[1]

POSITION OF PARTIES

A.  Defendants' Position

---

[1] Defendants had earlier sought summary judgment as to these two claims on timeliness grounds. However, that motion was not fully framed for consideration until early March 2004, i.e. less than a week before the trial was scheduled to and, in fact, did commence. The parties were advised that the Court would not be in a position to render a decision prior to trial, but would decide the issue either at the end of plaintiff's case-in-chief or sometime thereafter.

Both at the conclusion of plaintiff's case-in-chief, and after all the evidence was presented, the Court reserved decision on the timeliness issue. Following receipt of defendants' post-verdict Fed. R. Civ. P. 50(b) motion, the Rule 56 summary judgment motion was denied as academic in that both applications requested the same relief. Be that as it may, however, it warrants mention that a review of the trial record, and also, incidentally, of the pretrial summary judgment submissions of the parties, discloses multiple material issues of fact. Such issues dictate the denial of defendants' Rule 50(b) motion as explained in the text infra, and would have brought about the same result had time permitted the Rule 56 motion to have been addressed on the merits.

Defendants contend: (1) "for TAZ to prevail, it must have demonstrated at trial that all of the acts of conversion for which it seeks damages occurred after May 1999," i.e. within the two years immediately preceding the filing of the complaint in May of 2001 (Defs.' Supplemental Mem. Supp. at 4); (2) "the statute of limitations for conversion starts to run from the time 'of the wrongful taking and not at the time of the discovery by plaintiff of the taking or of the identity of the taker,'" citing <u>Jackson v. American Credit Bureau Inc.</u>, 531 P.2d 932, 934 (Ariz. Ct. App. 1975)(<u>id.</u>); and (3) "[w]hile the burden of showing that the claims are barred is on defendant, <u>Kiley v. Jennings, Strouss and Salmon</u>, 927 P.2d 796, 799 (Ariz. [Ct. App.] 1996) '[i]f defendant establishes a <u>prima</u> <u>facie</u> case that the statute was applicable, the burden of going forward shifts to plaintiff to show its claims fall within the recognized exception to the statute,'" again citing <u>Kiley</u>. <u>Id.</u> at 4-5.

B.  <u>Plaintiff's Position</u>

The plaintiff maintains that (1) Arizona has a statute of limitations "discovery rule"[2] for both conversion and tortious interference claims, contrary to the position urged by

---

[2] "Under the 'discovery rule,' a plaintiff's cause of action does not accrue until the plaintiff knows or, in the exercise of reasonable diligence should know the facts underlying the cause." <u>Gust, Rosenfeld & Henderson v. Prudential Ins. Co.</u>, 182 Ariz. 586, 588, 898 P.2d 964, 966 (Sup. Ct. 1995)(en banc).

defendants;[3] (2) that TAZ did not know, nor should they have known, of defendants' conduct until a whistleblower came forward in January 2001; and (3) even if, arguendo, "the discovery rule does not apply, [defendants'] statute of limitations defense fails because each separate tortious act is a separate tort." Pl.'s Mem. Opp'n at 6 (caption of Argument C; uppercase in plaintiff's memorandum has been changed to lowercase).

## DISCUSSION

1. <u>Burden of Proof Rests With Defendants</u>

The two year statute of limitations contained in Arizona Revised Statutes, § 12-542 explicitly governs claims "for converting [another's personal property] to one's own use." A.R.S. § 12-542(5). The same statute also pertains to tortious interference with contract claims. See <u>Clark v. Airesearch Mfg.</u>

---

[3] As earlier noted, defendants cite <u>Jackson v. American Credit Bureau Inc.</u>, 531 P.2d 932, 934 (Ariz. Ct. App. 1975) for the proposition that the statute of limitations for conversion claims starts to run at the time of the wrongful taking, rather than from the aggrieved party's discovery of the wrong. Similarly, this Court, by way of dictum, in its November 16, 2004 decision cited the same Arizona intermediate appellate court opinion for the same, as it develops, erroneous proposition. Nov. 16, 2004 Mem. Order at 4-5.

Although <u>Jackson</u> was neither reversed nor explicitly overruled, its holding is inconsistent with another Court of Appeals' decision issued in the 1970s, <u>Walker v. Walker</u>, 500 P.2d 898 (Ariz. Ct. App. 1972), and more importantly, is, as explained later in the text, wholly out-of-sync with current Arizona law as articulated by the state's highest tribunal, its Supreme Court.

Co. of AZ, Inc., 673 P.2d 984, 987 (Ariz. Ct. App. 1983) ("the two year statute of limitations in A.R.S. § 12-542 governs claims for wrongful interference with contract.").

Defendants proffer that "no competent proof of tortious conduct after May 1999 was submitted to the jury." Defs.' Supplemental Mem. Supp. at 11. Defendants surely are not suggesting — given the overwhelming contra-indications in the trial record — that <u>all</u> the evidence adduced points to <u>all</u> transgressions having occurred prior to that date. Instead, the import of the statement seems to be that the record is silent as to when various wrongs, if within the two year period, were said to have been committed. Even if, arguendo, that is true, the problem is defendants', not plaintiff's. To prevail at trial, plaintiff was merely required to establish, as it did, each element of the conversion and tortious interference claims. It was defendants' obligation to demonstrate that the acts underlying the causes of action were committed outside the statutory period.

Defendants claim to have done so by demonstrating that several of the multitude of acts of conversion and tortious interference predate May of 1999. From that, defendants maintain that they have made a prima facie showing of the legitimacy of their statute of limitations defense, thereby shifting "'the burden of going forward . . . to the plaintiff to show its claims

fall within a recognized exception to the statute[s' two year] limitations [period].'"[4] Defs.' Supplemental Mem. Supp. at 4-5, citing Kiley, 187 Ariz. at 139.

As noted by plaintiff, the fatal flaw in that argument is that it fails to "recognize that [under Arizona law] each [wrongful] act constitutes a separate tort as long as separate damages flow from each act." Pl.'s Opp'n at 6, correctly citing Floyd v. Donahue, 923 P.2d 875, 879-880 (Ariz. Ct. App. 1996). Which is to say, establishing that a particular tortious act occurred more than two years before the filing of the complaint, shifts the burden of coming forward to plaintiff as to that single incident, not across the board as defendants implicitly urge. As to other incidents, the burden continues to rest solely with defendants absent any shifting of the burden of coming forward to plaintiff. Moreover, it must be remembered that the ultimate burden of proof on the timeliness issue — as distinct from the burden of coming forward in some instances — rests with

---

[4] Arizona courts speak of tort claims accruing under the discovery rule when the plaintiff knows or should have known of the wrong and the identity of the wrongdoer. See, e.g., Gust, Rosenfeld & Henderson, 182 Ariz. at 588, 898 P.2d at 966 (Sup. Ct. 1995). The absence of the term "toll" suggests that an argument could be made that a plaintiff's knowledge of a cause of action is a precondition to its existence rather than an "exception" under Kiley's burden shifting analysis. However, for present purposes, the Court has accepted defendants' understanding since it will not affect the outcome of the motion.

party asserting the affirmative defense, the defendants.

Having addressed the threshold issue of burden of proof, attention will now be directed to the question of whether the two year statute began to run contemporaneously with defendants' wrongful conduct, or not until TAZ discovered, or should have discovered the wrongdoing. Simply put, is the discovery rule applicable to the subject torts under Arizona law?

2. Arizona's Discovery Rule Re Conversion
   and Tortious Interference

It is undisputed that (1) "a district court in interpreting state law is bound by precedent of the state's highest court" (Defs.' Reply Supplemental Mem. at 3, citing <u>Erie R. Co. v. Tompkins</u>, 304 U.S. 64 (1938)), and (2) that Arizona's highest court held in <u>Stockmen's State Bank v. Merchants' and Stockgrowers' Bank</u>, 22 Ariz. 354, 197 P. 888 (Sup. Ct. 1921) that the statute of limitations for conversion begins to run at the time of the wrongful taking in the absence of fraud or concealment, not at the time of discovery.

The appropriate focal point for <u>Erie</u> purpose is, of course, the present. <u>Stockmen's State Bank</u> was decided in 1921. That being said, however, the case has never been expressly overruled. But as explained by the Arizona Supreme Court in <u>Gust, Rosenfeld and Henderson v. Prudential Insurance Co.</u>, 182 Ariz. 586, 898 P.2d 964 (Sup. Ct. 1995)(en banc), the law has

-8-

evolved since Stockmen's State Bank and, in the process, has undergone a metamorphosis regarding when a tort-based cause of action accrues for statute of limitations purposes. The relevant excerpt from Gust reads:

> As a general matter, a cause of action accrues, and the statute of limitation commences, when one party is able to sue another. . . . The traditional construction of that rule has been that the period of limitations begins to run when the act upon which the legal action is based took place, even though the plaintiff may be unaware of the facts underlying his or her claim. See Stockmen's State Bank v. Merchants' and Stockgrowers' Bank, 22 Ariz. 354, 363-64, 197 P. 888, 892 (1921). In an effort, however, to mitigate the harshness that the traditional rule was capable of inflicting on a plaintiff who did not know of the breach, courts have developed an exception. Under the 'discovery rule,' a plaintiff's cause of action does not accrue until the plaintiff knows or, in the exercise of reasonable diligence, should know the facts underlying the cause. . . . In tort cases, Arizona courts were early in recognizing the equities behind the discovery rule. In 1932, this court held, in an action for trespass based on the unintentional, wrongful removal of underground ore, that the statute of limitations did not commence until the plaintiff knew or reasonably should have known of the removal of the ore. Tom Reed Gold Mines Co. v. United Eastern Mining Co., 39 Ariz. 533, 535, 8 P.2d 449, 450 (1932). . . .
>
> Similarly, this court held in 1948 that in a medical malpractice case where the injury was by nature difficult to detect, the statute of limitations did not begin to run until the plaintiff discovered the facts constituting his cause of action. Morrison v. Acton, 68

> Ariz. 27, 36, 198 P.2d 590, 596 (1948). Our court of appeals expressly adopted the discovery rule in its current form in another medical malpractice case, Mayer v. Good Samaritan Hospital, 14 Ariz. App. 248, 252, 482 P.2d 497, 501 (1971)("[A] cause of action in a malpractice case accrues when the plaintiff knew or by the exercise of reasonable diligence should have known of the defendant's conduct."). Although the discovery rule found wide application first in tort cases, a significant number of courts in recent years have applied the discovery rule to contract cases as well. . . .
>
> The rationale behind the discovery rule is that it is unjust to deprive a plaintiff of a cause of action before the plaintiff has a reasonable basis for believing that a claim exists.

Gust, 182 Ariz. at 588-89; 898 P.2d at 966-67 (some internal citations deleted).

Although a considerable portion of the relevant discussion in Gust involved malpractice claims, obviously the discovery rule is not confined to that subset of torts. Gust makes that clear by beginning its analysis with Tom Reed Gold Mines Co., a trespass case. And nine years before Gust, the Arizona Supreme Court in Boswell v. Phoenix Newspapers, Inc., 152 Ariz. 9, 730 P.2d 186 (Sup. Ct. 1986)(en banc) had occasion to address the scope of the discovery rule. The Boswell Court framed the issue before them thusly:

> We . . . must decide . . . exactly what types of actions and damages the framers intended to constitutionalize. Did the framers intend to limit the protection of Art. 18, § 6 to

>            negligence cases in which bodily injury was
>            sustained or to extend it to all actions
>            recognized at common law[.][5]

Boswell, 152 Ariz. at 13, 730 P.2d at 190.

In answer to that question, the Boswell Court held, in essence, that the constitutional protections afforded by Article 18, § 6 extended to all torts recognized at common law, including Boswell's defamation claim. Both conversion and tortious interference are recognized at common law. See also Davis v. Dow Chemical Corp., 819 F.2d 231, 233 (9th Cir. 1987)("Arizona courts have adopted the discovery rule for . . . tort actions.") and Poling v. Morgan, 829 F.2d 882, 886 (9th Cir. 1987)(applying discovery rule to Arizona-based conversion claim).

To partially reiterate: (1) Stockmen's State Bank held that a conversion claim accrues upon the wrongful taking (incidentally, it appears that no constitutional challenge under Article 18, § 6 or otherwise was advanced in Stockmen's State Bank); (2) Arizona law has evolved and, indeed, changed in the

---

[5] Article 18, § 6 of the Arizona Constitution provides in pertinent part: "The right of action to recover damages for injuries shall never be abrogated." With respect to "the [constitutional] protection" it affords, Article 18, § 6, has been interpreted by Arizona courts to render a "statute of limitations or repose [unconstitutional if it] abrogates an action for damages even before the action arises or can reasonably be discovered." Kenyon v. Hammer, 142 Ariz. 69, 688 P.2d 961, 980 (Sup. Ct. 1984)(en banc) (Hayes, J., concurring). "Importantly, the majority opinion in Kenyon expressed agreement with this view" of Justice Hayes. Integrated Resources Equity Corp. v. Founders Bank of Arizona, 74 F.3d 1246, 1996 WL 19170 at *5 (9th Cir. 1996)(unpublished opinion).

post-<u>Stockmen's State Bank</u> period, as explained by the Arizona Supreme Court in <u>Gust</u>; (3) currently, all torts recognized at common law are subject to the discovery rule as per rulings of Arizona's highest court; and (4) conversion and tortious interference are common law torts and, thus, subject to the discovery rule.

3. Application of Discovery Rule to TAZ's
   <u>Conversion and Tortious Interference Claims</u>

Having concluded that the discovery rule applies to plaintiff's conversion and tortious interference claims, the question becomes when TAZ knew, or should have known of defendants' wrongful conduct.

Absent from the record is evidence indicating that plaintiff was aware of defendants' wrongdoing before the whistleblower came forward. However, an argument could be made that, at least in a few instances, greater effort by TAZ might have disclosed the nature of defendants' conduct earlier. To the extent that is true, it would have given rise to a series of factual disputes for the jury to resolve. Yet, defendants never asked that the jury be charged on the timeliness issue, nor did they request that the jury be called upon in the verdict sheet to answer specific questions pertaining to when TAZ first discovered, or in exercise of reasonable diligence should have discovered the misconduct of Discreet and Meron. A perusal of

defendants' initial and current supplemental memoranda suggests, however, that this was not an oversight on their part. From those submissions, it is evident that defendants believe that they are entitled to judgment as a matter of law, and presumably harbored that belief during the trial thereby obviating the need for jury input.

Simply put, that belief is misguided. To partially reiterate, it is axiomatic that defendants have the burden of establishing their affirmative defenses. Even if, arugendo, some of the many incidents of conversion and tortious interference occurred more than two years before the filing of the complaint, that does not trigger on obligation on plaintiff's part to come forward with evidence that <u>all</u> of defendants' misconducts falls within an "exception" for <u>Kiley</u> purposes. Nonetheless, plaintiff did place evidence before the jury indicating that it was unaware of any of defendants' wrongdoing until a whitleblower surfaced in 2001, and that their lack of knowledge was reasonable under the circumstances. Accordingly, plaintiff more than satisfied its burden of coming forward under <u>Kiley</u>. Conversely, defendants failed to carry their ultimate burden of proof on the timeliness issue.

In sum, the applicability of the discovery rule to the claims under discussion is fatal to defendants' Rule 50(b) motion across the board. As noted, absent the discovery rule,

defendants did point to some discrete instances of conversion and tortious interference which occurred before May of 1999. But under the discovery rule, even those few instances do not appear to be time-barred or, at least, defendants have failed to demonstrate that they are.

CONCLUSION

For the reasons indicated, defendants' post-verdict Rule 50(b) motion — viewed separately upon the evidence as it existed as of the time the plaintiff's case-in-chief was concluded, and at the conclusion of all the evidence — is found to be without merit and, accordingly, is denied.[6]

SO ORDERED.

Dated: May 2, 2005
Central Islip, New York

---

[6] The same result would be required even if, arguendo, the discovery rule was inapplicable. Both Stockmen's State Bank v. Merchants'& Stockgrowers' Bank, 22 Ariz. 354, 197 P. 888 (Sup. Ct. Ariz. 1921) and Jackson v. American Credit Bureau, Inc., 23 Ariz App. 199, 531 P.2d 932 (Ariz. Ct. App. 1975) explicitly recognize that affirmative efforts by a wrongdoer intended to prevent a victim's discovery of the wrongdoing tolls the running of the applicable statute of limitations. Stockmen's State Bank, 22 Ariz. at 363, 197 P. at 891; Jackson, 23 Ariz. App. at 209, 531 P.2d at 935 ("There must be some positive act of concealment done to prevent detection" to toll the statute of limitations).

Factual issues of concealment abound in the trial record. Therefore, even if the discovery rule is culled from the analysis of defendants' Rule 50(b) motion, the same result, to wit, denial, would be required.

_____/S/_____
DENIS R. HURLEY, U.S.D.J.